UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MAI V.,

    Plaintiff,

v.

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security,*

    Defendant.

Case No. 17-cv-4347 (ECT/DTS)

REPORT AND RECOMMENDATION

---

James Greeman, Esq., Greeman Toomey, 250 Marquette Avenue, Suite 1380, Minneapolis, MN 55401, for plaintiff

Kizuwanda Curtis, Esq., Social Security Administration, 1301 Young Street, Suite A702, Dallas, TX 75202, and Pamela A. Marentette, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant

---

Mai V. appeals the Commissioner of Social Security's denial of her application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Docket No. 1. She contends that the ALJ erred in discounting the opinions of her treating psychologist and other sources and that the Commissioner's decision to deny benefits is not supported by substantial evidence in the record. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

**I.   ALJ DECISION**

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a

listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued her decision on August 26, 2016. In steps one through three, she found that Mai V. has not engaged in substantial gainful activity since August 18, 2012[1]; has several severe physical and mental impairments – history of right wrist fracture, chronic pain syndrome, history of cardiovascular accident, depression, and anxiety – that do not meet or medically equal any listed impairment contained in 20 C.F.R., Part 404, Subpart P, Appendix 1; and has the residual functional capacity (RFC) to perform light work with certain identified limitations. R. 218-20.[2] At step four the ALJ found that Mai V. is capable of performing her past relevant work (PRW) as an assembler of hospital products and thus concluded she was not disabled. R. 226-27.

## II.   STANDARD OF REVIEW

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* § 405(g) (sentence four).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] In her application for benefits Mai V. alleged an onset date in 2007, but ALJ Kunz pointed out at the July 12, 2017 hearing that there was a previous ALJ decision dated August 17, 2012 which ALJ Kunz saw no basis to re-open. Therefore, ALJ Kunz considered August 18, 2012 to be the relevant onset date for Mai V.'s current disability claim, and Mai V.'s attorney stated that he had no objection to that date. R. 308-09.
[2] "R." refers to the Administrative Record. Docket No. 10.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Under the regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous work, but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

This Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Telkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). On review, the Court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). If it is possible, based on the evidence in the record, to reach two inconsistent decisions, and one of those decisions is the Commissioner's position, the decision must be affirmed. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In other words, the denial of benefits will not be disturbed "so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial trier of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence . . . embodies a zone of choice within which the Secretary may grant or deny benefits without being subject to reversal on appeal.").

The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Once the claimant demonstrates that he or she cannot perform past work due to a disability, the burden "shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

### III. ANALYSIS

Mai V. contends that the ALJ erred in finding her not disabled based on her determination that Mai V. could perform her past work as an assembler of hospital products. Mai V. argues that her mental limitations are more severe than the ALJ found and the ALJ erred in giving more weight to the opinions of non-examining agency psychological consultants than those of her treating psychologist, Dr. Nicole Ward, and other sources.

In making a disability determination, an ALJ considers evidence that includes "medical opinion" evidence of the claimant's "impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). Such limitations include the claimant's "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" and "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 416.913(a)(2)(i)(A) and (B).

A treating physician's opinion should be given controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002). The record must be evaluated as a whole to determine whether the treating physician's opinion should control. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009). The ALJ must always give "good reasons" for the weight afforded to the treating source's opinion. *Id.* at 680; 20 C.F.R. § 404.1527(c)(2).

The ALJ found that Mai V. has both physical and mental limitations on her ability to work. R. 220. The physical limitations are not disputed in this appeal. As to her mental limitations, the ALJ found that Mai V. has "mild" restriction in activities of daily living, with "moderate" difficulties in social functioning and in concentration, persistence or pace. R. 219. She determined that Mai V. has the residual functional capacity (RFC) to perform light work with certain restrictions: lifting up to 20 pounds occasionally and 10 pounds frequently; 6 hours of walking or standing and 2 hours of sitting in an 8-hour workday; no more than occasional bending, stooping, crouching, kneeling, or crawling; no more than occasional overhead work; no power gripping on the right dominant upper extremity, defined as the use of torque or force beyond normal handling; and the work should be routine, repetitive simple work that does not require more than brief and superficial contacts with others. R. 220.

Treating psychologist Dr. Nicole Ward provided a March 16, 2016 opinion that Mai V. had severe impairments in daily functioning, self-care, and socialization and was unable to hold a job due to her psychological symptoms. Ex. C21F at R.2014. The ALJ

5

gave "no" weight to Dr. Ward's opinion because her "treatment notes do not contain any objective basis to support such a conclusion and instead are focused on issues with family conflict." R. 224. Those therapy notes detail Mai V.'s "concerns over wanting to live on her own, wanting her own place, feeling as if her daughter-in-law did not like her, being worried about not living up to her daughter-in-law's standards of cleanliness, and issues with her youngest son borrowing her car." *Id.* (citing Ex. C26F at 18, 20, 24, 36, 88).

The ALJ likewise gave "little" or "no" weight[3] to Dr. Ward's ongoing assessment of GAF scores in the 31-40 range,[4] finding that her treatment notes contained no objective support for such scores, and her records as well as "other mental health treatment records from that time do not support that level of functioning." R. 222, (citing Ex. C5F, found at R. 1047-1155), 224. She noted that, while Mai V. "has received a great deal of mental health treatment, none of the relevant records document functioning at the low level described by" Mai V. R. 222. For example, Dr. Ward's "records note little in the way of observations other than that of a depressed mood and flat affect." *Id.* (citing Ex. C5F). "Other mental health progress notes . . . describ[e] the claimant as appropriately groomed and dressed, with no cognitive disturbances, . . .

---

[3] At R. 224 the ALJ says the GAF scores were "not given weight," while at R. 222 she says they were "given little weight."

[4] A Global Assessment of Functioning (GAF) scale measures "psychological, social, occupational functioning" on a 1 to 100 scale. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, at 34 (4th ed. text revision 2000) (DSM-IV-TR). A GAF of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas such as work, school, family relations, judgment, thinking, or mood. *Id.* The subsequent edition of the manual, DSM-V, does not use GAF scores to rate mental disorders. GAF scores "have no direct correlation to the severity standard used by the Commissioner." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015). A GAF score may have little or no bearing on a person's social and occupational functions. *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010).

6

mood which was affected by family stressors, . . . no observed abnormalities in thought process or contact, and full orientation." R. 222-23 (citing Ex. C4F (found at R. 959-1056) at 7, 11, 13, 16).

Mai V. testified at her July 12, 2017 hearing that she had problems with concentration and attention such that she sometimes forgot what she was doing - forgot to turn off the stove, give people messages, and close and lock the door when leaving the house. R. 298-99.

The ALJ found that the observations of other medical professionals during this time period - including Mai V.'s treating psychiatrist, Dr. Pastor Colon, who prescribed her medications - did not support the low level of functioning that Mai V. reported and that Dr. Ward stated in her March 26, 2016 opinion. R. 223-24. For example, on January 19, 2016 Mai V. was seen at HCMC for TMJ and neck pain and depression. R. 2164. Hospital records state that she was alert and oriented, with a normal mood, affect, and behavior. R. 2166. Later that month, on January 26-29, 2016 Mai V. was hospitalized at North Memorial after presenting at the emergency room for evaluation of depression and suicidal ideation after a fight with her son regarding yelling at his children. R. 1785, 1788, 1803. She reported a history of hallucinations that did not bother her and had not worsened, and she denied any present hallucinations. R. 1785, 1789, 1796. Mai V.'s main stressors were identified as financial and family problems, and in particular her housing situation in which she alternated living with different members of her family. R. 1796, 1799, 1803. While hospitalized, she was given an occupational therapy evaluation, which "indicated a mild functional decline, with

7

beginning deficits in abstract thought processes." R. 1802. She requested early discharge and reported that her symptoms had cleared. R. 1806.

On March 14, 2016 Mai V. was seen at HCMC and reported that she had passed out on the sofa a few weeks earlier because she forgot to breathe. R. 2198. The medical record states that she was alert and oriented, with normal mood, affect, and behavior. R. 2200. The following day she was seen at Community University Health Care Center (CUHCC) for case management services. R. 1868. The notes of her case manager, Jenny Xiong, describe a normal appearance, no behavior abnormalities, and euthymic mood. *Id.*

In June 2016 Mai V. was seen at North Memorial's emergency room for mental health issues, with thoughts of suicide and killing her ex-husband, and was admitted to the hospital. R. 2375, 2378. She had stopped taking Wellbutrin because of side effects and had a "very superficial" "scratch" on her thumb. R. 2388. She stated that her children and family were not supportive, she and her family had not set boundaries with her ex-husband, and she had "'stuffed' all the stress and anger and it's become too overwhelming to bear." R. 2393. She was discharged at her request and at the time of discharge was observed to be calm, clean, cooperative, with normal speech and eye contact; neutral mood and affect; intact concentration, attention span and memory; and intact thought process and content. R. 2401, 2403.

The ALJ found that the records of Mai V.'s treating psychiatrist, Dr. Colon, who prescribed her medications, reflect no more than "moderate" limitations in functioning as a result of her mental impairments, not the more severe limitations to which Mai V. testified and Dr. Ward opined. R. 223-24. The ALJ specifically cited to Dr. Colon's

8

Mental Status Examination notes from October 8 and November 6, 2015 and January 8 and February 19, 2016 in which Dr. Colon observed Mai V. had normal psychomotor activity, normal speech, no loose associations, intact memory, and "mild[ly]" or "moderate[ly]" impaired concentration. R. 223 (citing Ex. C26F at 1, 3, 5, 7).

The ALJ also gave "no" weight to the opinions of Mai V.'s group therapy leaders because they were not supported by the group therapy notes. R. 224. Licensed Professional Counselor Vickie Wilhelm, leader of the pain management group, opined on April 5, 2016 that Mai V.'s "inability to concentrate, racing thoughts, and hallucinations particularly eliminate her ability to work at this time." Ex. C29F at R. 2343. The ALJ gave this opinion no weight because the group notes gave no indication that Mai V. displayed racing thoughts or an inability to concentrate during group sessions, or was having hallucinations. R. 224. Mental Health Practitioner Hlee Lee, another group therapist, opined on March 22, 2016 that Mai V. would "not be able to hold a job due to her psychological symptoms" such as inability to focus and concentrate, follow through on tasks, and irritability with others. C23F at R. 2068. The ALJ gave this opinion no weight because the group notes do not contain any indication that Mai V. had ongoing conflict with others in the group or an inability to focus and concentrate. R. 224.

Jenny Xiong, who provided case management services to Mai V. at CUHCC, opined on April 1, 2016 about Mai V.'s various difficulties in performing physical activities due to pain, coping with daily activities, and understanding and completing forms and daily tasks. Ex. C28F at R. 2342. The ALJ gave "no" weight to Ms. Xiong's opinion because, first, she was not qualified to assess Mai V.'s physical limitations and, second, her statements were not supported by the case management notes. R. 224-25.

9

The ALJ specifically summarized case notes from January 16 and October 2, 2015 and February 2, March 15, May 24, and June 1, 2016 that described Mai V.'s capabilities and were not consistent with the statements in Ms. Xiong's opinion. R. 224-25 (citing Exs. C17F (R. 1866-1957), C31F (R. 2346-61)). Those case notes indicate Mai V. "was deemed capable of driving a car, shopping at Target, obtaining necessary paperwork, and . . . was observed to be seeking letters and meetings in conjunction with her application for social security benefits, suggesting she was quite capable of advocating for herself in the community." R. 225.

Jonathan Hoistad, a non-treating psychologist, saw Mai V. on two occasions and opined on March 15, 2016 that she had significant difficulty with interpersonal relationships; could not meet competitive standards in the workplace in areas such as attendance, working with others, performing at a consistent pace, and dealing with workplace stress and decision-making; and had no ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Ex. C18F at R. 1958-79. The ALJ gave "no" weight to Dr. Hoistad's opinion for "several reasons," including that he cited three episodes of decompensation but none were documented in the record; he cited low IQ but this too was not documented in the record; he cited no rationale for concluding Mai V. would miss work four times a month; and he cited no objective findings to support his conclusion that she would be unable to meet competitive standards in most work functions. R. 225.

Dr. Tseganesh Selameab, who saw Mai V. at HCMC on August 12, 2014, opined as part of the medical record on that date that Mai V.'s "depression and PTSD make it really difficult for her [to] work and to engage in her daily life." Ex. C9F at R. 1416. The

record also states that he spent 30 minutes with her, she "spent most of the visit discussing her disability application," is "unsure why her claim has been denied" several times, and "is asking me if I think she can work." R. 1415-16. The ALJ gave "no" weight to this opinion because Dr. Selameab did not indicate any specific work-related limitations for Mai V. R. 225.

The ALJ gave "some" weight to the opinions of two state agency psychological consultants in August 2014 and January 2015 who determined that Mai V. had "mild" limitations in the activities of daily living; "moderate" difficulties in social functioning and in concentration, persistence or pace; and that other mental limitations affecting her ability to work were "moderate" or "not significant." Exs. C5A, C6A (Aug. 2014 Initial Determination); Exs. C9A, C10A (Jan. 2015 Reconsideration). The ALJ found these opinions were supported by the record, and new records submitted since January 2015 did not support any greater limitations. R. 225.

The ALJ evaluated the medical, therapy, and case management records in detail, stated the weight she gave to the various opinions, and explained her reasons and the support she found in the records. Substantial evidence in the record supports her findings regarding Mai V.'s mental and physical limitations and her RFC determination that Mai V. could perform her PRW as a medical assembler and therefore was not disabled.

Mai V. contends that the ALJ did not give any reasons, much less supported ones, for rejecting treating psychologist Dr. Ward's opinion regarding the severity and effect of Mai V.'s mental limitations on her ability to work. She states that, though the ALJ discussed Dr. Ward's March 16, 2016 opinion letter (Ex. C21F), the ALJ did not

11

refer at all to Dr. Ward's two other opinions from December 8, 2014 (Ex. C36F) and July 14, 2016 (Ex. C40F). Those opinions are Medical Source Statements (MSS) that include checklists in which Dr. Ward indicated that Mai V. had "marked" or "extreme" limitations in her mental ability to do various work-related activities. Ex. C36F at R. 2498-2500, Ex. C40F at R. 2591-93. The December 2014 checklist marks the same "marked" and "extreme" boxes as the July 2016 checklist. The Court thus will focus on Dr. Ward's July 2016 MSS because it is closest in time to her March 2016 opinion letter, the July 2016 hearing, and the August 2016 ALJ decision.

The MSS form asks the medical provider to rate the claimant's ability to perform "work-related mental activities" based on the provider's "findings with respect to medical history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis." It advises that "[i]t is very important to describe the factors that support your assessment. [The Social Security Administration] is required to consider the extent to which your assessment is supported."

Dr. Ward rated Mai V.'s limitations for various work-related mental activities as "marked" and "extreme," with "marked" being defined as "a substantial loss in the ability to effectively function" and "extreme" as having "no useful ability to function" in that area. R. 2591-92. Dr. Ward identified the following "medical/clinical findings [to] support" her assessment:

> Cognitive impairments due to depression and PTSD.
>
> * * *
>
> Mai has difficulty in social setting and w/her interpersonal relationships. She has difficulty interacting w/others, even family members. Things are often misinterpreted. This likely comes from her mistrust of others and PTSD.

> \* \* \*
>
> Some trouble focusing during session and becomes distracted by other thoughts. Can become somewhat defensive and irritable. She often has trouble organizing her thoughts.

R. 2591-92.

It is true that the ALJ did not mention the two MSSs in her decision. However, she extensively evaluated and discussed the underlying medical, therapy, and case management records, including Dr. Ward's treatment records, as well as Mai V.'s testimony about her mental limitations. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (ALJ not required to discuss or cite to all the evidence submitted or considered). The MSSs filled out by Dr. Ward contain ratings based on her treatment of Mai. V. - the same records that the ALJ considered and discussed in her decision. The MSSs are not new or different medical records in and of themselves. Based on her review of the medical, therapy, and case management records, the ALJ determined that the evidence did not support any limitations beyond "moderate" limitations in functioning as a result of Mai V.'s mental impairments. R. 224. The ALJ thus rejected any basis for the "marked" and "extreme" limitations that Dr. Ward indicated on the MSSs, for the same reasons and based on the same records on which she relied when discounting Dr. Ward's March 26, 2016 opinion.

The Court finds that the ALJ gave supported reasons for discounting Dr. Ward's opinion and that substantial evidence in the record as a whole supports her decision that Mai V. is not disabled. *See Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (ALJ must evaluate the record as a whole to determine whether treating physician's

opinion should control). Accordingly, the Court recommends that the Commissioner's decision be affirmed.

## RECOMMENDATION

Based on the foregoing and all the files, records and submissions, IT IS RECOMMENDED THAT:

1. Mai V.'s Motion for Summary Judgment [Docket No. 12] be DENIED.

2. The Commissioner's Motion for Summary Judgment [Docket No. 15] be GRANTED.

Dated: January 22, 2019

                                              s/David T. Schultz
                                              DAVID T. SCHULTZ
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).